GLENFORD EDWARD ENNIS, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 43556

July 13, 2006

137 P.3d 1095

*Carling & Whipple, LLC*, and *Matthew D. Carling*, Henderson, for Appellant.

*George Chanos*, Attorney General, Carson City; *David J. Roger*, District Attorney, and *James Tufteland*, Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, we consider whether *Crawford v. Washington*[1] applies retroactively to post-conviction proceedings. We also consider whether appellant Glenford Ennis's trial counsel rendered ineffective assistance. We conclude that *Crawford* does not apply retroactively. We also conclude that Ennis's counsel did not render ineffective assistance. Thus, we affirm the district court's order denying the petition.

### FACTS

On March 30, 2001, appellant Glenford Ennis stabbed Michelle Welch to death in her mother's home. Ennis and Michelle had been dating for approximately three years. In September 1999 Michelle made her first call to the North Las Vegas Police Department (NLVPD) concerning an incident with Ennis. Officer Scott Vaughn testified that he responded to the call and spoke with Michelle but determined that no domestic violence had occurred.

In March 2000, Officers Gary King and Dennis Nowakowski responded to a second call from Michelle regarding an incident with Ennis. At trial, the officers testified that Michelle told them that Ennis began choking her and slapping her in the face after she told him she wanted to end the relationship. Ennis was placed under arrest for domestic battery.

A third incident occurred on January 13, 2001, when Michelle allegedly ran her car into Ennis's garage after an argument. Officers Gary King and Don Collins responded to the incident. The officers testified they concluded that Michelle was the aggressor and arrested her after she resisted their attempts to speak with her. Both officers testified that Michelle was agitated at the scene.

On February 18, 2001, Officers Leonard Cardinale and Anthony Bailey were dispatched to investigate a domestic dispute between the parties. Officer Cardinale testified that Michelle had told him that Ennis had threatened to kill her, stating ''he was going to go to jail anyway, so he might as well just kill her.'' Officer Cardinale also testified that Michelle told him, ''[Ennis] would, in fact, kill her, so she opened the window and tried to get out the window.''

---

[1]541 U.S. 36 (2004).

Finally, Officer Cardinale testified that "[Ennis] said he would stop [hitting her] as long as she promised not to call the police."

Officer Bailey testified that Michelle appeared nervous and apprehensive and had some visible bruising on her head and arms. He further testified that Michelle explained to him that "[Ennis] told me if I called the police he was going to kill me, I didn't want you here."

On March 23, 2001, Officer Robert Aker responded to a call concerning a domestic violence incident in violation of a temporary restraining order. He observed that Michelle was almost hysterical when he arrived at her house. Michelle told him that she had received a telephone call from Ennis that was in violation of the temporary restraining order and that he arrived at her house shortly after he hung up. Ennis left when she called 911.

Officer Stephen Barr testified that he was dispatched to Michelle's home the following day in response to a report of another violation of a temporary restraining order. When he arrived, Michelle appeared nervous and was shaking. She told him that Ennis had been banging on the front door but had left prior to the police arriving.

Michelle's bedridden grandmother was upstairs when the murder occurred, and although she heard the incident take place, she was unable to investigate. She was on the phone with her daughter (Michelle's aunt), Emma Williams, at the time. Williams testified at trial that "[m]y mom asked me to call the police, because she said Glen was there jumping on Michelle." The medical examiner testified regarding the multiple stab wounds suffered by Michelle.

Ennis testified that he stabbed Michelle to death, but that it was in self-defense. On October 22, 2001, a jury found Ennis guilty of one count of second-degree murder with use of a deadly weapon, one count of coercion with physical force, and one count of attempted murder. The judgment of conviction was filed on February 14, 2002. Ennis filed his notice of direct appeal on February 15, 2002. This court affirmed the judgment of the district court on June 18, 2003, and the remittitur was issued on July 15, 2003. Ennis filed his post-conviction petition for a writ of habeas corpus in the district court on January 20, 2004. The petition was denied; Ennis appeals.

## DISCUSSION

### Retroactivity of Crawford v. Washington

In *Crawford*, the United States Supreme Court held that testimonial hearsay statements made by an unavailable witness must be subject to a prior opportunity for cross-examination in order to be

admissible.[2] Ennis now contends that statements by the officers and family members constituted testimonial hearsay that would have been excluded under *Crawford*. Because *Crawford* was decided after Ennis's conviction, we must determine whether its holding applies retroactively. We conclude that *Crawford* has no retroactive application under either federal or Nevada law to cases that were already final prior to the decision.

*Retroactivity analysis under federal law*

The determination as to whether a decision of the Supreme Court should be applied retroactively requires a three-step analysis under federal law. First, a determination must be made as to whether the conviction in question is final. Second, this court must determine whether the Supreme Court's decision announced a new rule of constitutional law. Third, if the rule is new, this court determines whether it falls into one of two limited categories of rules that may be applied retroactively.

### 1. *Finality of conviction*

When a decision of the Supreme Court results in a ''new rule,'' that rule applies to all pending criminal cases.[3] Except in limited circumstances, however, new rules are not retroactively applied to convictions that are already final.[4] A conviction is final ''for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari [to the Supreme Court] has elapsed or a timely filed petition has been finally denied.''[5]

By the time *Crawford* was decided in March 2004, the remittitur from this court's order affirming Ennis's conviction on direct appeal had issued, and the time within which Ennis could have filed a petition for a writ of certiorari to the Supreme Court had elapsed. Thus, Ennis's conviction is final for the purposes of retroactivity analysis.

### 2. *New rule of constitutional law*

A Supreme Court decision announces a new rule ''if the result was not *dictated* by precedent existing at the time the defendant's

---

[2]541 U.S. at 68-69.

[3]*Schriro v. Summerlin*, 542 U.S. 348, 351 (2004).

[4]*Id.*

[5]*Caspari v. Bohlen*, 510 U.S. 383, 390 (1994).

conviction became final.''[6] We agree with a number of federal courts that the Supreme Court's decision in *Crawford* announced a new rule of constitutional law.[7] Prior to *Crawford*, the appropriate framework for determining if the admission of hearsay statements violated the Confrontation Clause was the Supreme Court's decision in *Ohio v. Roberts*.[8] Under *Roberts*, the out-of-court statements of an unavailable witness could be admitted without violating the Confrontation Clause as long as the statement fell into a firmly rooted hearsay exception or possessed certain ''indicia of reliability.''[9] In *Crawford*, the Court set a higher bar, holding that testimonial hearsay was admissible only if there had been a prior opportunity to cross-examine the unavailable witness.[10]

The Supreme Court itself noted that the rationale of *Roberts* was inconsistent with the Court's conclusion in *Crawford*.[11] Indeed, Chief Justice Rehnquist noted that the majority's holding constituted ''a new interpretation of the Confrontation Clause.''[12] We agree and conclude that *Crawford* established a new rule of constitutional law.

### 3. *Retroactive effect*

Generally, new rules are not retroactively applied to final convictions. However, the Supreme Court recognizes two situations where new constitutional rules should be given retroactive effect.[13]

First, the court will give retroactive effect to a new substantive rule.[14] Substantive rules include decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations placing particular conduct beyond the state's power to punish.[15] Substantive rules apply retroactively because they '' 'necessarily carry a significant risk that a defendant stands con-

---

[6]*Butler v. McKellar*, 494 U.S. 407, 412 (1990) (internal quotation marks omitted).

[7]*See Bockting v. Bayer*, 399 F.3d 1010, 1019 (9th Cir. 2005), *cert. granted*, 126 S. Ct. 2017 (2006); *Brown v. Uphoff*, 381 F.3d 1219, 1226 (10th Cir. 2004), *cert. denied*, 543 U.S. 1079 (2005).

[8]448 U.S. 56, 66 (1980).

[9]*Id.*

[10]541 U.S. at 68.

[11]*Id.* at 60.

[12]*Id.* at 69 (Rehnquist, C.J., concurring in the judgment).

[13]*Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality opinion).

[14]*Schriro*, 542 U.S. at 351.

[15]*Id.* at 351-52.

victed of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him."[16] Clearly, this exception does not apply because *Crawford* neither narrowed the scope of a criminal statute nor placed private conduct beyond the power of the state to proscribe.[17] The decision in *Crawford* rested entirely on the Sixth Amendment right to confrontation and had "nothing to do with the range of conduct [the government] may criminalize."[18]

Second, the court will retroactively apply a new rule setting forth a watershed rule of criminal procedure.[19] As noted by the Supreme Court, such a rule must be one "without which the likelihood of an accurate conviction is seriously diminished."[20] This class of rules is extremely narrow, and with the exception of the right to counsel in *Gideon v. Wainwright*,[21] the Court has not recognized any such rule.[22]

In *Brown v. Uphoff*, the Tenth Circuit Court of Appeals held recently that *Crawford* did not establish a watershed rule of criminal procedure.[23] The court compared *Crawford* to *Gideon*, where the Supreme Court held that criminal defendants have the right to be represented by counsel at trial. In *Brown*, the court concluded that unlike *Gideon*, *Crawford* did not alter fundamental due process rights and thus should not be applied retroactively.[24] Instead, *Crawford* "merely sets out new standards for the admission of certain kinds of hearsay."[25]

The Ninth Circuit Court of Appeals, however, recently held in *Bockting v. Bayer* that *Crawford* is a watershed rule of criminal procedure.[26] The court reasoned that because the central concern of the Confrontation Clause is to ensure the reliability of the evi-

---

[16]*Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 620 (1998)). The Supreme Court has sometimes analyzed substantive rules "as falling under an exception to *Teague*'s bar on retroactive application of procedural rules." *Id.* at 352 n.4. In *Schriro*, however, the Court concluded that "they are more accurately characterized as substantive rules not subject to the bar." *Id.*

[17]*Brown v. Uphoff*, 381 F.3d 1219, 1226 (10th Cir. 2004), *cert. denied*, 543 U.S. 1079 (2005).

[18]*Schriro*, 542 U.S. at 353.

[19]*Id.* at 352.

[20]*Teague*, 489 U.S. at 313 (plurality opinion).

[21]372 U.S. 335, 345 (1963).

[22]*See Saffle v. Parks*, 494 U.S. 484, 495 (1990) (identifying *Gideon* as a watershed decision).

[23]*Brown*, 381 F.3d at 1227.

[24]*Id.* at 1226-27.

[25]*Id.* at 1226.

[26]399 F.3d 1010, 1016 (9th Cir. 2005), *cert. granted*, 126 S. Ct. 2017 (2006).

dence, the absence of cross-examination seriously diminishes the accuracy of the proceedings.[27] As such, the court concluded that *Crawford* announced a new bedrock rule of criminal procedure meriting retroactive application under federal law.[28]

We decline to follow *Bockting.* Rather, we agree with the majority of jurisdictions that have addressed the issue that *Crawford* has no retroactive application under federal law to cases that were final prior to the decision.[29] *Crawford* did not alter our understanding of basic due process but instead merely set out new standards for the admission of hearsay. Even before *Crawford*, the admission of such evidence was governed by historical hearsay exceptions requiring indicia of reliability. Therefore, convictions in which testimonial hearsay was admitted under *Roberts* do not pose a serious risk of inaccuracy because the admission of such evidence was based on the application of well-settled common law and statutory rules that guaranteed reliability. In addition, Confrontation Clause violations are subject to harmless error analysis.[30] As the Tenth Circuit noted, this makes it difficult to conclude that the rule in *Crawford* alters rights fundamental to due process.[31]

As a result, we hold that the rule in *Crawford* is not a new substantive rule nor a watershed rule of criminal procedure. Therefore, under federal law, it does not retroactively apply to Ennis's conviction.

*Retroactivity analysis under Nevada law*

Our conclusion that the rule in *Crawford* does not apply retroactively under federal law does not end our inquiry. We must also

---

[27] *Id.* at 1018.

[28] *Id.* at 1020.

[29] *See, e.g., Espy v. Massac*, 443 F.3d 1362, 1367 (11th Cir. 2006); *Lave v. Dretke*, 444 F.3d 333, 336 (5th Cir. 2006), *petition for cert. filed*, No. 05-11552 (U.S. June 13, 2006); *Dorchy v. Jones*, 398 F.3d 783, 788 (6th Cir. 2005); *Murillo v. Frank*, 402 F.3d 786, 791 (7th Cir. 2005); *Mungo v. Duncan*, 393 F.3d 327, 336 (2d Cir. 2004), *cert. denied*, 544 U.S. 1002 (2005); *Evans v. Luebbers*, 371 F.3d 438, 444 (8th Cir. 2004), *cert. denied*, 543 U.S. 1067 (2005); *Edwards v. People*, 129 P.3d 977, 988 (Colo. 2006); *Chandler v. Crosby*, 916 So. 2d 728, 730-31 (Fla. 2005); *Danforth v. State*, 700 N.W.2d 530, 532 (Minn. Ct. App. 2005); *People v. Soto*, 795 N.Y.S.2d 429, 433 (Sup. Ct. 2005); *In re Markel*, 111 P.3d 249, 254 (Wash. 2005).

[30] *Brown*, 381 F.3d at 1226-27; *see also U.S. v. Mora*, 293 F.3d 1213, 1219 (10th Cir. 2002) (holding that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), did not alter fundamental due process rights, in part because *Apprendi* errors could be excused given overwhelming evidence).

[31] *Brown*, 381 F.3d at 1227.

consider the retroactivity of *Crawford* under Nevada law under the standards we set out in *Colwell v. State*.[32] We hold that *Crawford* does not satisfy these standards; thus, Ennis is not entitled to post-conviction relief.

In *Colwell*, we modified the federal retroactivity standard, adopting our own three-part test to determine if a new constitutional rule of criminal procedure should be given retroactive effect. First, we inquire whether the rule enunciated by the Supreme Court is new. Second, if the rule is new, we determine whether the conviction of the person seeking application of the rule was final. Third, we determine whether the rule falls under the two exceptions to nonretroactivity we enunciated in *Colwell*.

### 1. *New rule of criminal procedure*

First, we determine whether the rule under review is new. In *Colwell*, we reserved our prerogative to define within the federal framework whether a rule is new, as long as we give federal constitutional rules at least as much retroactive effect as the federal courts.[33] Nevada's definition of a new rule includes, among other things, decisions overruling precedent, disapproving of a practice this court arguably sanctioned in prior cases, or overturning a long-standing practice uniformly approved by lower courts.[34] Because the *Crawford* decision clearly overruled the precedent in *Roberts*, it set forth a new rule under Nevada law.

### 2. *Finality of conviction*

Second, we determine "whether the conviction of the person seeking application of the rule has become final."[35] This part of the test mirrors its federal counterpart. "A conviction becomes final when judgment has been entered, the availability of appeal has been exhausted, and a petition for certiorari to the Supreme Court has been denied or the time for such a petition has expired."[36] As noted above, these conditions are satisfied and thus Ennis's case was "final" prior to the issuance of the *Crawford* opinion.

---

[32] 118 Nev. 807, 820, 59 P.3d 463, 472 (2002).

[33] *Id.* at 819, 59 P.3d at 471.

[34] *Id.* at 818-20, 59 P.3d at 471-72.

[35] *Id.* at 820, 59 P.3d at 472.

[36] *Id.*

### 3. Retroactive effect

Third, we determine whether an exception to nonretroactivity applies. In *Colwell*, we established two exceptions to the rule that new decisions do not apply retroactively to a final conviction:

> When a rule is new, it will still apply retroactively in two instances: (1) if the rule establishes that it is unconstitutional to proscribe certain conduct as criminal or to impose a type of punishment on certain defendants because of their status or offense; or (2) if it establishes a procedure without which the likelihood of an accurate conviction is seriously diminished.[37]

We do not limit the first exception to "primary, private individual conduct" and under the second exception, we do not distinguish a separate requirement of "bedrock" or "watershed" significance. Instead, "if accuracy is seriously diminished without the rule, the rule is significant enough to warrant retroactive application."[38] Therefore, under certain circumstances, we may retroactively apply a rule under Nevada law that does not meet the federal standard.

We conclude that *Crawford* does not apply retroactively even under the *Colwell* approach. First, as explained, *Crawford* had nothing to do with the range of conduct that can be proscribed or the punishment that can be imposed. Second, as the Tenth Circuit noted, *Crawford* does not alter any right fundamental to due process but merely sets out new standards for the admission of certain kinds of hearsay.[39] As discussed above, *Crawford* does not establish a procedure without which the likelihood of an accurate conviction is seriously diminished. We hold that *Crawford* does not satisfy the *Colwell* standard for retroactive application and therefore Ennis is not entitled to post-conviction relief under Nevada's retroactivity analysis.

### Ineffective assistance of counsel

A defendant has a constitutional right to assistance of counsel in a criminal prosecution.[40] Ineffective assistance of counsel claims are evaluated under the test established in *Strickland v. Washington*.[41] In order to avoid the distorting effects of hindsight, the eval-

---

[37]*Id.* at 820, 59 P.3d at 471.

[38]*Id.*

[39]*Brown*, 381 F.3d at 1226.

[40]U.S. Const. amend. VI.

[41]466 U.S. 668, 687 (1984); *see Warden v. Lyons*, 100 Nev. 430, 432, 683 P.2d 504, 505 (1984).

uation begins with the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."[42]

*Strickland* states that a petitioner must demonstrate that: (1) counsel's performance was so deficient as to fall below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense.[43] To establish prejudice, a petitioner must show that, but for counsel's errors, there is a reasonable probability that the verdict would have been different.[44] A court may consider the two prongs in any order and need not consider both if the petitioner fails to provide sufficient proof of one.[45] As ineffective assistance claims present mixed questions of law and fact, this court exercises independent review.[46] However, a district court's factual finding regarding a claim of ineffective assistance of counsel is entitled to deference so long as it is supported by substantial evidence and is not clearly wrong.[47]

Ennis asserts that his counsel failed to object to the testimony of Emma Williams, the victim's maternal aunt. Emma testified, "I was on the phone talking to my mom, and all of a sudden she got real quiet, she wasn't saying anything. And I asked her what was wrong, and she told me that Glen had come in the house and he was jumping—." Ennis's attorney then stated, "Judge, if I may pose an objection. There is no foundation as to the hearsay that— in the record." The district court sustained the objection and then stated, "Let's back up a little bit."[48] Williams then testified that "[m]y mom asked me to call the police, because she said Glen was there jumping on Michelle." Michelle's grandmother was present on the day of the killing and testified that she heard the altercation between Michelle and Ennis while she was on the phone with Williams.

Ennis's ineffective assistance of counsel claim lacks merit because he has failed to demonstrate he suffered any prejudice from Williams's testimony. Ennis admitted being at the house and killing

---

[42]*Strickland*, 466 U.S. at 689.

[43]*Id.* at 687. This court recently held that the petitioner must prove the facts underlying his ineffective assistance of counsel claim by a preponderance of the evidence. *Means v. State*, 120 Nev. 1001, 1013, 103 P.3d 25, 33 (2004).

[44]*Strickland*, 466 U.S. at 694 (explaining that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome").

[45]*Id.* at 697.

[46]*Evans v. State*, 117 Nev. 609, 622, 28 P.3d 498, 508 (2001).

[47]*Riley v. State*, 110 Nev. 638, 647, 878 P.2d 272, 278 (1994).

[48]Notably, Michelle's grandmother also testified directly prior to Emma's testimony. She was also called as a witness by Ennis but was not questioned regarding her statement made to her daughter over the phone.

Michelle, claiming it was done in self-defense. Therefore, Williams's testimony placing him at the scene did not prejudice him.

■■■■■■■■

Moreover, his attorney did object, a better foundation was laid, and Williams's testimony clearly falls within the excited utterance exception to the hearsay rule.[49] Trial counsel need not lodge futile objections to avoid ineffective assistance of counsel claims.[50] Therefore, the district court did not abuse its discretion in permitting the statement to be admitted and counsel did not render ineffective assistance.[51]

## CONCLUSION

We conclude that *Crawford* does not apply retroactively, and that Ennis has presented no arguments warranting relief in this matter. Accordingly, we affirm the order of the district court denying Ennis's petition.

BECKER, GIBBONS, DOUGLAS and HARDESTY, JJ., concur.

MAUPIN, J., with whom ROSE, C. J., agrees, concurring:

I agree with the majority that *Crawford v. Washington*[1] does not retroactively apply to testimonial hearsay statements admitted in the October 2001 jury trial of this appellant, made final by the lapse of the time within which appellant could have sought certiorari with the United States Supreme Court following his direct appeal.

From 1980 to 2004, pursuant to the Supreme Court decision in *Ohio v. Roberts*,[2] the admission of such evidence in state and federal prosecutions was determined under two criteria: first, whether the hearsay declarant was unavailable; second, whether the hearsay statement fell within a "firmly rooted" hearsay exception or the statement reflected "particularized guarantees of trustworthiness."[3]

---

[49]NRS 51.095 ("A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition is not inadmissible under the hearsay rule.").

[50]*Donovan v. State*, 94 Nev. 671, 675, 584 P.2d 708, 711 (1978).

[51]We have reviewed Ennis's other arguments concerning ineffective assistance of counsel and cumulative error and conclude they are without merit.

[1]541 U.S. 36, 59 (2004) (holding that testimonial hearsay statements of a witness who does not appear at trial are inadmissible under the Confrontation Clause of the Sixth Amendment unless the witness is unavailable to testify, and the defendant has had a prior opportunity to cross-examine the witness).

[2]448 U.S. 56 (1980).

[3]*Id.* at 66.

As we noted in *Flores v. State*,[4] *Crawford* unwinds the prior analytical framework set forth in *Roberts* for determining if the admission of testimonial hearsay violates the Confrontation Clause of the Sixth Amendment of the Federal Constitution.[5]

In my view, it would be manifestly cataclysmic to a legal system steeped in principles of stare decisis and federalism to retroactively unwind a procedural rule applied in good faith in literally thousands of state prosecutions in Nevada and throughout the United States. I write separately to note that, based upon the strident language in *Crawford*, the Supreme Court of the United States may very well apply *Crawford* retroactively in the pending matter of *Bockting v. Bayer*,[6] now pending before that Court. In his majority opinion in *Crawford*, Justice Scalia made the following observation:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. . . .
>
> . . . [Thus, w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.[7]

The opinion relates at length to the original intent of the framers and concludes emphatically that *Roberts* was wrongly decided. In doing so, it does not frame the confrontation requirement as a "new rule." Rather, the opinion implicitly concludes that any confrontation analysis conducted under *Roberts* during its twenty-four year shelf-life was wrong because *Roberts* was at odds with the original intent of the framers of the amendment. In this stated construct, the legal system in this country can now assume that the rule in *Roberts* was never valid. If that is true, *Crawford*'s restatement of the confrontation rule from its inception is not a new rule of constitutional procedure and cannot be restricted to prospective application starting with cases still pending as of 2004. Certainly, while the United States Court of Appeals for the Tenth Circuit in

---

[4]121 Nev. 706, 710-11, 120 P.3d 1170, 1173 (2005).

[5]Made applicable to the states by incorporation through the Fourteenth Amendment in *Pointer v. Texas*, 380 U.S. 400, 407-08 (1965).

[6]399 F.3d 1010 (9th Cir. 2005), *cert. granted*, 126 S. Ct. 2017 (2006).

[7]541 U.S. at 68-69.

*Brown v. Uphoff*[8] correctly noted that "[a] decision by the Supreme Court announces a new rule if 'the result was not *dictated* by precedent existing at the time [a] defendant's conviction [becomes] final,' " *Crawford* cannot be said to be new if the precedent was wrong under originalist constitutional principles. That said, we must await the Supreme Court's final pronouncement as to whether *Crawford* must be applied retroactively, or only prospectively from the date dictated by it as a "new" rule.

---

[8]381 F.3d 1219, 1226 (10th Cir. 2004) (quoting *Butler v. McKellar*, 494 U.S. 407, 412 (1990)), *cert. denied*, 543 U.S. 1079 (2005).