An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123

IN THE SUPREME COURT OF THE STATE OF NEVADA

JAMES MONTELL CHAPPELL,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 61967

**FILED**

JUN 1 8 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from an order of the district court denying a post-conviction petition for a writ of habeas corpus in a death penalty case. Eighth Judicial District Court, Clark County; Carolyn Ellsworth, Judge.

Appellant James Montell Chappell went to the home of Deborah Panos, his ex-girlfriend and the mother of his three children, sexually assaulted her, stabbed her to death with a kitchen knife, and left the home with some of her property. A jury convicted Chappell of burglary, robbery, and first-degree murder and sentenced him to death. This court affirmed Chappell's conviction and death sentence on direct appeal. *Chappell v. State (Chappell I)*, 114 Nev. 1403, 972 P.2d 838 (1998). Chappell sought post-conviction relief in the district court and was granted a new penalty hearing. This court affirmed the judgment of the district court. *Chappell v. State (Chappell II)*, Docket No. 43493 (Order of Affirmance, April 7, 2006). At the conclusion of the second penalty hearing, the jury again sentenced Chappell to death. This court affirmed the sentence on appeal. *Chappell v. State (Chappell III)*, Docket No. 49478 (Order of Affirmance, October 20, 2009). In this appeal from the denial of his first post-conviction petition for a writ of habeas corpus following the

15-18713

second penalty hearing, Chappell argues that the district court erred in denying his claims of ineffective assistance of counsel.[1]

*Ineffective assistance of counsel*

Chappell argues that the district court erred by denying numerous claims of ineffective assistance of trial and appellate counsel without conducting an evidentiary hearing. "A claim of ineffective assistance of counsel presents a mixed question of law and fact, subject to independent review," *Evans v. State*, 117 Nev. 609, 622, 28 P.3d 498, 508 (2001), but the district court's purely factual findings are entitled to

---

[1]Chappell also contends that the death penalty is unconstitutional on three grounds: (1) the death penalty scheme fails to genuinely narrow death eligibility, a contention we have rejected, *see State v. Harte*, 124 Nev. 969, 972-73, 194 P.3d 1263, 1265 (2008); (2) the death penalty is cruel and unusual, an argument we have rejected, *see Gallego v. State*, 117 Nev. 348, 370, 23 P.3d 227, 242 (2001); and (3) the death penalty is unconstitutional because executive clemency is unavailable, an argument we have rejected, *see Colwell v. State*, 112 Nev. 807, 812, 919 P.2d 403, 406-07 (1996). He also contends that his conviction and sentence violate the Universal Declaration of Human Rights and the International Covenant on Civil and Political Rights. As he could have raised this claim in the appeal taken from his judgment of conviction and he failed to assert cause for the failure to do so or actual prejudice, the district court did not err in denying this claim. *See* NRS 34.810(1)(b).

In addition, Chappell also contends that the district court erred in denying his claim that his conviction violates due process based on an erroneous guilt phase instruction on premeditation and deliberation and that all prior counsel were ineffective for not challenging the instruction. This claim is not properly raised because the proceeding at issue is his second penalty hearing. *See Chappell v. State (Chappell III)*, Docket No. 49478, at 27-28 (Order of Affirmance, October 20, 2009) (concerning Chappell's appeal from his second penalty hearing where this court concluded that Chappell's challenge to the premeditation murder instruction was not properly before the court).

deference. *Lara v. State*, 120 Nev. 177, 179, 87 P.3d 528, 530 (2004). Under the two-part test established by the United States Supreme Court in *Strickland v. Washington*, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) prejudice. 466 U.S. 668, 687-88, 694 (1984); *Kirksey v. State*, 112 Nev. 980, 987-88, 998, 923 P.2d 1102, 1107, 1114 (1996). To prove ineffective assistance of appellate counsel, a petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness, and but for counsel's errors, the omitted issue would have had a reasonable probability of success on appeal. *Kirksey*, 112 Nev. at 998, 923 P.2d at 1114. "The defendant carries the affirmative burden of establishing prejudice." *Riley v. State*, 110 Nev. 638, 646, 878 P.2d 272, 278 (1994). A court need not consider both prongs of the *Strickland* test if a defendant makes an insufficient showing on either prong. *Strickland*, 466 U.S. at 697. An evidentiary hearing is warranted only if a petitioner raises claims supported by specific factual allegations that are not belied by the record and, if true, would entitle him to relief. *See Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984).

*Failure to present testimony*

Chappell contends that the district court erred in denying his claim that trial counsel were ineffective for failing to introduce testimony from James Ford and Ivri Morrell. We disagree. Chappell could not demonstrate that, had he been able to introduce the testimony of Ford and Morrell, he would not have been sentenced to death, because the subject matter of Ford and Morrell's proffered testimony was substantially covered by other witnesses. In particular, Benjamin Dean, Fred Dean, and Mira King discussed the early stages of Chappell and Panos'

SUPREME COURT
OF
NEVADA

(O) 1947A

relationship. King even provided broader testimony than could be provided by Ford and Morrell. Further, Ford's and Morrell's proffered testimony about the beginning of the relationship was not compelling considering the trajectory that the relationship eventually followed: Chappell physically abusing, threatening, and eventually murdering Panos. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

*Failure to obtain an expert*

Chappell argues that the district court erred in denying his claim that trial counsel were ineffective for failing to obtain an expert who could have testified that pre-ejaculatory fluid may contain sperm, which he claims would have reinforced his testimony instead of discrediting it. We conclude that although counsel were deficient, Chappell failed to demonstrate that he was prejudiced. The presence of sperm was not the only evidence that supported the sexual assault aggravating circumstance and undermined Chappell's testimony. Chappell had a history of abusing Panos, wrote hostile and threatening letters to her, and threatened her in court. Before his unexpected release from custody, Panos had planned to move somewhere Chappell could not find her. Consequently, she became terrified when she learned of Chappell's release. While Chappell was at Panos' home, she attempted to engage in subterfuge to escape. In addition, her body bore injuries indicating that she had been beaten 15 to 30 minutes before her murder. Given this evidence, Chappell did not demonstrate a reasonable probability that, but for counsel's failure to introduce expert testimony on this issue, the jury would not have found that the murder was committed during the course of a sexual assault.

Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

*Positron emission tomography ("P.E.T.") scan*

Chappell argues that the district court erred in denying his claim that trial counsel were ineffective for failing to obtain a P.E.T. scan where there was some evidence that his mother was addicted to drugs and alcohol. He contends that a scan could have revealed indicia of Fetal Alcohol Spectrum Disorders, which could cause physical, learning, and behavioral problems. We conclude that the district court did not err in denying this claim without conducting an evidentiary hearing. At the second penalty hearing, trial counsel introduced expert testimony that Chappell had a low IQ as well as cognitive deficits, which had been supported by psychological testing and Chappell's school records. As his cognitive deficits had been extensively documented and the jury nevertheless concluded that they were not sufficiently mitigating, Chappell failed to demonstrate that counsel were deficient in not obtaining a P.E.T. scan or that he would have benefited from a more thorough investigation. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004) ("Where counsel and the client in a criminal case clearly understand the evidence and the permutations of proof and outcome, counsel is not required to unnecessarily exhaust all available public or private resources."); *see also State v. Powell*, 122 Nev. 751, 759, 138 P.3d 453, 458 (2006) ("An attorney must make reasonable investigations or a reasonable decision that particular investigations are unnecessary." (citing *Strickland*, 466 U.S. at 691 (1984))).

*Failure to prepare Dr. Lewis Etcoff to testify*

Chappell argues that the district court erred in denying his claim that trial counsel were ineffective for failing to prepare psychologist Dr. Lewis Etcoff's testimony. He contends that Dr. Etcoff's testimony could have been more persuasive if he had not relied solely on Chappell's statements but reviewed other evidence.[2] We conclude that Chappell failed to demonstrate that had counsel better informed Dr. Etcoff the jury would not have found the sexual assault aggravator. Dr. Etcoff provided context for Chappell's abuse in his relationship with Panos and explained how his cognitive deficits contributed to the murder. Therefore, cross-examination about further abuse and problems in the relationship did not undermine his premise. Regardless of how informed the psychologist's opinion could have been, Chappell failed to show that it would have been persuasive in light of the remaining evidence contradicting Chappell's testimony. The evidence demonstrated that Panos ended her relationship with Chappell, Chappell threatened to kill her, he absconded from the parole office, snuck into her window, beat Panos, and killed her. Given this evidence, Dr. Etcoff's opinion, even if it was as informed as Chappell wanted it to be, would not have been persuasive enough to overcome the

---

[2]Chappell further argues that had counsel introduced an expert to testify that pre-ejaculate could contain spermatozoa, Dr. Etcoff would not have admitted that the presence of Chappell's DNA in the victim rendered Chappell's testimony unbelievable. As Dr. Etcoff testified about Chappell's psychological condition, it was not unreasonable for counsel to have not anticipated questioning about the results of DNA evidence. Moreover, as discussed above, Chappell failed to demonstrate counsel was ineffective for failing to obtain such an expert.

great weight of evidence demonstrating that any sexual conduct that occurred on the day of the murder was not consensual.

### Failure to prepare Dr. William Danton to testify

Chappell argues that better preparation could have rendered clinical psychologist Dr. William Danton's testimony more convincing. He asserts that Dr. Danton's testimony was unpersuasive because he (1) only briefly met with Chappell, (2) contradicted Dr. Etcoff's opinion on whether Chappell could remember the murder, and (3) conceded that it was possible that Chappell forced Panos to have sex. We conclude that Chappell failed to demonstrate that trial counsel performed deficiently in their preparation of Dr. Danton. Dr. Danton's testimony related to Panos and her state of mind; therefore, it was not undermined by the decision to not thoroughly evaluate Chappell. Moreover, Dr. Danton's testimony concerning whether Chappell blacked out during the murder is not inconsistent with Dr. Etcoff's assessment. In addition, Chappell cannot demonstrate that he was prejudiced by Dr. Danton's acknowledgement that Chappell could have forced Panos to have sex given the substantial evidence showing that Chappell raped Panos. Therefore, Dr. Danton's acknowledgement that rape was at least a possibility, did not leave Chappell's defense in a worse position. The district court did not err in denying this claim without conducting an evidentiary hearing.

### Failure to prepare Dr. Todd Grey to testify

Chappell argues that the district court erred in denying his claim that trial counsel were ineffective for failing to prepare Dr. Todd Grey's testimony by informing him of the presence of Chappell's sperm in Panos' body and the threats and prior abuse in Chappell and Panos' relationship. We disagree. As Chappell's testimony that he had

consensual intercourse with the victim shortly before her murder but did not ejaculate was not believable in light of the other evidence introduced at trial, Dr. Grey's acknowledgment that ejaculation had occurred did not render Chappell's testimony less believable. Chappell further failed to demonstrate that he would not have been sentenced to death had Dr. Grey been aware of prior threats, abuse, Chappell's testimony, and other evidence from the scene. As a medical examiner, Dr. Grey's expertise was limited to the condition of Panos' body. Therefore, his opinion was not undermined by cross-examination about the prior threats, abuse, or Chappell's testimony. Further, even knowing about the prior reports of abuse and testimony in the case did not alter Dr. Grey's conclusion that there was no evidence of injury indicative of sexual assault. We therefore conclude the district court did not err in denying this claim without conducting an evidentiary hearing.

*Failure to properly prepare a lay mitigation witness*

Chappell contends that the district court erred in denying his claim that trial counsel were ineffective for not adequately preparing Benjamin Dean to testify so that his testimony was not "severely impeached" by a prior affidavit. We conclude that Chappell failed to demonstrate that had Dean been better prepared, there is a reasonable probability that he would not have been sentenced to death. The subject matter of Dean's testimony was substantially covered by other witnesses, including Mira King, Chappell's sister, and Fred Dean, Chappell's friend, who testified about Chappell's home life and the beginning of Chappell and Panos' relationship. Their testimony was not similarly impeached. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

*Failure to object to cumulative victim impact testimony*

Chappell argues that the district court erred in denying his claim that trial counsel were ineffective for failing to challenge the adequacy of the notice of evidence in aggravation and that appellate counsel was ineffective for failing to argue that the victim-impact evidence was unfairly cumulative. We disagree.

The State's notice of evidence in aggravation was sufficient to inform the defense that the State would present evidence from Mike Pollard and Carol Monson. *See Mason v. State*, 118 Nev. 554, 561, 51 P.3d 521, 525 (2002) (noting that SCR 250(4)(f) requires the State's notice of aggravation to summarize any evidence that the State intends to introduce during the penalty hearing). Further, the notice indicated that Pollard would testify about Panos before the murder and Monson would testify about Panos' family life. Although Pollard also testified about how Panos' death affected him, the cross-examination does not indicate that Chappell was caught unaware by any of the testimony. Further, the notice also indicated that the State planned to introduce evidence from Christina Rees and Doris Wichtoski. Accordingly, Chappell could not claim he was unfairly surprised by the introduction of their letters, which Monson read.

Chappell would have further been unable to demonstrate on appeal that the trial court's decision to admit Pollard's and Monson's testimony was an abuse of discretion. *See Johnson v. State*, 122 Nev. 1344, 1353, 148 P.3d 767, 774 (2006) (noting that this court reviews a district court's decision to admit evidence for an abuse of discretion). The evidence presented by Pollard and Monson was not needlessly cumulative. *See* NRS 48.035. Pollard's prior and live testimony focused on different

aspects of the murder: his prior testimony detailed Panos' state of mind and Chappell and Panos' relationship and his live testimony focused on Panos and the effect her death had on him. Monson testified about Panos, her relationship with Panos, and the effect of Panos' death on their family. She also read several letters from family members and her own letter which provided more detail about Panos' life and death. Although the testimony and letters covered similar themes, the information contained and perspectives expressed therein were not repetitive and Monson's testimony was brief in the context of the overall length of the penalty hearing. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

*Failure to address prosecutorial misconduct*

First, Chappell contends that the district court erred in denying his claim that trial counsel were ineffective for failing to object to several instances of prosecutorial misconduct that Chappell challenged in his direct appeal in order to have benefited from a less deferential standard of review on appeal. We disagree. We concluded on direct appeal that the challenged comments did not constitute prosecutorial misconduct, *Chappell v. State (Chappell III)*, Docket No. 49478, at 23-25 (Order of Affirmance, October 20, 2009), and therefore a less deferential standard of review on direct appeal would not have resulted in relief.

Second, Chappell contends that the prosecutor committed misconduct by stating that Chappell had been arrested 10 times in front of his children because no evidence supported the comment. We agree that the prosecutor's comment was improper. However, trial counsel objected to the comment, and the district court sustained the objection. Therefore, Chappell cannot demonstrate that counsel's performance was deficient.

Further, given the brevity of the comment, the district court's action in sustaining the objection, and the evidence produced during the penalty hearing, Chappell cannot demonstrate that appellate counsel was ineffective for not raising the issue on appeal. *See Hernandez v. State*, 118 Nev. 513, 525, 50 P.3d 1100, 1108 (2002) (recognizing that a criminal conviction will not be overturned on the basis of prosecutorial misconduct unless the misconduct "so infected the proceedings with unfairness as to make the results a denial of due process").[3]

Third, Chappell argues that the district court erred in denying his claim that trial counsel were ineffective for failing to object to the prosecutor's comments describing Chappell as "a despicable human being" who "chose evil." We disagree. Given the context of the comments, the prosecutor was not "ridicul[ing] or belittl[ing] the defendant or the case," *Earl v. State*, 111 Nev. 1304, 1311, 904 P.2d 1029, 1033 (1995), but rather was describing the defendant and his actions using terminology that "merely expressed the gravity of the crime charged," *Browning v. State*, 124 Nev. 517, 534, 188 P.3d 60, 72 (2008). As an objection would have been futile, Chappell cannot demonstrate that counsel's performance was deficient. *See Epps v. State*, 901 F.2d 1481, 1483 (8th Cir. 1990) (explaining that prosecutor's comments that were not objectionable cannot be the basis for ineffective-assistance claim based on counsel's failure to object); *Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006)

---

[3]Chappell also contends that the statement violated NRS 48.045's bar against the admission of prior bad acts. As evidence of uncharged bad acts is admissible during a capital penalty hearing, *see Nika v. State*, 124 Nev. 1272, 1296, 198 P.3d 839, 856 (2008), this argument lacks merit.

(stating that counsel cannot be deemed ineffective for failing to make a futile objection).

*Failure to object to improper impeachment*

Chappell argues that the district court erred in denying his claim that trial and appellate counsel were ineffective for failing to challenge the State's improper impeachment of Fred Dean regarding the facts and circumstances of his prior conviction. The State's impeachment was improper because questions about the sentence imposed and facts underlying a witness' conviction are irrelevant. *See Jacobs v. State*, 91 Nev. 155, 158, 532 P.2d 1034, 1036 (1975); *Plunkett v. State*, 84 Nev. 145, 147, 437 P.2d 92, 93 (1968). Trial counsel should have objected. However, Chappell failed to demonstrate prejudice because the inquiry involved the facts of Dean's prior criminal actions, not Chappell's actions. Although Dean testified on Chappell's behalf, he was not closely associated with Chappell. Moreover, the facts of Dean's drug conviction were relatively innocuous and there is no reasonable probability of a different outcome at the penalty hearing had the information not been presented or that Chappell would have obtained relief on appeal based on this error. Therefore, no relief is warranted on this claim.

*Admission of bad act evidence*

Chappell contends that the district court erred in denying his claim that appellate counsel was ineffective for not arguing that Ladonna Jackson's prior testimony, in which she noted that Chappell made money by stealing, was impermissible bad act testimony that was not adequately noticed. We disagree. The State informed Chappell that it intended to introduce testimony from the guilt phase of his trial, including "prior trial and penalty hearing transcripts. . . . for the purpose of establishing the

character of the defendant for penalty purposes." This description encompassed Jackson's trial testimony. Further, such testimony was not inadmissible, as evidence of uncharged prior bad acts is admissible at the penalty hearing. *See Nika*, 124 Nev. at 1296, 198 P.3d at 856.[4] Therefore, Chappell failed to demonstrate that appellate counsel's performance was deficient. *See Ennis*, 122 Nev. at 706, 137 P.3d at 1103 (stating that counsel cannot be deemed ineffective for failing to make a futile objection).[5]

*Cumulative error*

Chappell argues that the district court erred in denying his claim that the cumulative errors of trial and appellate counsel warrant relief. We disagree. Chappell only demonstrated that counsel's performance was deficient in two respects: failing to introduce an expert to testify about the presence of sperm in the victim and failing to object to the improper impeachment of Fred Dean. Even assuming that counsel's deficiencies may be cumulated, *see Harris by and through Ramseyer v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1995) (concluding that prejudice may result from cumulative effect of multiple counsel deficiencies); *State v.*

---

[4]Chappell suggests, in passing, that this testimony is impalpable or highly suspect. In light of the other evidence showing that Chappell stole to support his drug habit, attempted to sell belongings and rent the victim's car after her murder, was apprehended trying to shoplift, and acknowledged that he stole items for his daughter's birthday, Chappell cannot demonstrate that Jackson's testimony is impalpable or highly suspect.

[5]To the extent that Chappell contends that the district court erred in admitting prior bad act evidence, this claim should have been raised in Chappell's direct appeal. *See* NRS 34.810(1)(b).

SUPREME COURT
OF
NEVADA

(O) 1947A

13

*Thiel*, 665 N.W.2d 305, 322 (Wis. 2003) (concluding that multiple incidents of deficient performance may be aggregated in determining prejudice under *Strickland*), we conclude that any deficiencies in counsel's performance had no cumulative impact warranting relief.

Having considered Chappell's contentions and concluding that they lack merit, we

ORDER the judgment of the district court AFFIRMED.[6]

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

---

[6]The Honorable Michael Douglas, Justice, voluntarily recused himself from participation in the decision of this matter.

cc: Hon. Carolyn Ellsworth, District Judge
Christopher R. Oram
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A