138 Nev., Advance Opinion 37

IN THE SUPREME COURT OF THE STATE OF NEVADA

MARLO THOMAS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 77345

FILED

MAY 26 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Stefany Miley, Judge.

*Affirmed in part, reversed in part, and remanded.*

Rene L. Valladares, Federal Public Defender, and Joanne L. Diamond and Jose A. German, Assistant Federal Public Defenders, Las Vegas, for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and John T. Afshar, Deputy District Attorney, Clark County, for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, HERNDON, J.:

Appellant Marlo Thomas was convicted of two murders (among other felony offenses) and sentenced to death for each murder. He obtained relief from the death sentences in the first postconviction proceeding

challenging his conviction and sentences, but a jury again imposed death sentences in a penalty phase retrial. This appeal involves Thomas's third postconviction petition for a writ of habeas corpus, a petition that the district court denied without conducting an evidentiary hearing after determining it is subject to multiple procedural bars under NRS Chapter 34. Consistent with our recent decision in *Chappell v. State*, 137 Nev., Adv. Op. 83, 501 P.3d 935 (2021), we conclude that Thomas timely asserted the alleged ineffective assistance of second postconviction counsel as good cause and prejudice to raise procedurally barred grounds for relief from the death sentences imposed at the penalty phase retrial. But also consistent with *Chappell*, we conclude that he failed to demonstrate good cause and prejudice to raise any other procedurally barred grounds for relief.

Among Thomas's numerous allegations that second postconviction counsel provided ineffective assistance, we conclude two of his claims warrant an evidentiary hearing: (1) his claim that second postconviction counsel failed to present compelling mitigation evidence to support the claim that penalty phase counsel provided ineffective assistance in developing and presenting the mitigation case at the penalty phase retrial; and (2) his claim that second postconviction counsel should have alleged that penalty phase counsel provided ineffective assistance during jury selection by failing to question, challenge for cause, or peremptorily challenge a veniremember who indicated she favored the death penalty, was not open to a sentence that would allow for parole, and could not consider mitigating circumstances. We therefore reverse the district court's order as to those two claims and remand for an evidentiary hearing limited to those claims. Because none of Thomas's remaining arguments warrant relief, we otherwise affirm the district court's order.

## FACTS

On April 15, 1996, Thomas and Kenya Hall robbed Thomas's former employer, Lone Star Steakhouse in Las Vegas, Nevada, while armed with pistols. While Hall watched the manager, Thomas found two employees in the men's restroom. They tried to leave and struggled with Thomas. Thomas grabbed a knife from the counter and repeatedly stabbed one victim and chased down the other and stabbed him as well. Both died as a result of their injuries. Thomas and Hall escaped with the money in a car driven by Angela Love (now Angela Thomas).

The jury convicted Thomas of two counts of murder with the use of a deadly weapon, one count of robbery with the use of a deadly weapon, first-degree kidnapping with the use of a deadly weapon, conspiracy to commit murder and/or robbery, and burglary while in possession of a firearm. The jury sentenced Thomas to death for each murder. This court affirmed the convictions and sentences on direct appeal. *Thomas v. State* (*Thomas I*), 114 Nev. 1127, 967 P.2d 1111 (1998).

Thomas successfully challenged the death sentences in a timely postconviction habeas petition and was granted a new penalty phase trial. *Thomas v. State* (*Thomas II*), 120 Nev. 37, 45, 83 P.3d 818, 824 (2004). At the penalty phase retrial, the jury sentenced Thomas to death for each murder. This court affirmed the death sentences on appeal, *Thomas v. State* (*Thomas III*), 122 Nev. 1361, 148 P.3d 727 (2006), and later affirmed the district court's order denying Thomas's second postconviction petition, which had been Thomas's first opportunity to collaterally challenge the death sentences imposed at the penalty phase retrial, *Thomas v. State* (*Thomas IV*), No. 65916, 2016 WL 4079643 (Nev. July 22, 2016) (Order of Affirmance).

Thomas filed the postconviction habeas petition at issue in this appeal—his third such petition—on October 20, 2017. He alleged that trial, appellate, first postconviction, second penalty phase, and second postconviction counsel provided ineffective assistance. The district court denied the petition as procedurally barred. This appeal followed.

## DISCUSSION

Thomas's petition was untimely, given that he filed it roughly 18 years after the remittitur issued in his direct appeal from the original judgment of conviction and 9 years after the remittitur issued in his direct appeal from the judgment of conviction entered after the penalty phase retrial. *See* NRS 34.726(1). The petition included grounds for relief that Thomas waived because he could have raised them on direct appeal or in the previous postconviction petitions. *See* NRS 34.810(1)(b)(2). The petition was also successive to the extent it alleged grounds for relief that had been considered on the merits in a prior proceeding, and it constituted an abuse of the writ to the extent it raised new and different grounds for relief. *See* NRS 34.810(2).

To avoid dismissal based on those procedural bars, Thomas had to demonstrate good cause and prejudice. *See* NRS 34.726(1); NRS 34.810(1)(b), (3). As this court has explained,

> Under Nevada law, a petitioner cannot relitigate his sentence decades after his conviction by continually filing postconviction petitions unless he provides a legal reason that excuses both the delay in filing and the failure to raise the asserted errors earlier, and further shows that the asserted errors worked to his "actual and substantial disadvantage."

*Castillo v. State*, 135 Nev. 126, 127-28, 442 P.3d 558, 559 (2019) (quoting *State v. Huebler*, 128 Nev. 192, 197, 275 P.3d 91, 95 (2012)). Thomas argues

that the district court erred in denying his petition as procedurally barred without conducting an evidentiary hearing. He asserts that ineffective assistance of prior postconviction counsel is sufficient to excuse his untimely and successive petition as to claims related to the guilt phase and the penalty phase retrial.[1] He also argues that *Williams v. State*, 134 Nev. 687, 429 P.3d 301 (2018), provides good cause to revisit the *Batson*[2] claim he previously raised; that the Supreme Court's decision in *Hurst v. Florida*, 577 U.S. 92 (2016), provides good cause to assert a penalty-phase instructional error for the first time; and that he is entitled to the cumulative consideration of procedurally barred claims.

*Thomas did not timely raise the good-cause claims based on ineffective assistance of first postconviction counsel*

Thomas contends that, because he had obtained relief from the death sentences imposed in the original judgment of conviction and first postconviction counsel (David Schieck) continued to represent him through the penalty phase retrial and the subsequent direct appeal in *Thomas III*, the third petition was his first opportunity to assert first postconviction counsel's ineffectiveness as good cause to raise procedurally barred grounds for relief from the convictions. We recently considered similar arguments and circumstances in *Chappell v. State*, 137 Nev., Adv. Op. 83, 501 P.3d 935 (2021). There, we concluded that a petitioner must assert good-cause claims

---

[1]Thomas also argues that the ineffective assistance of trial and appellate counsel provides good cause to excuse the procedural bars. We disagree because the claims themselves are procedurally barred. *See Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003) (stating that an ineffective-assistance claim may excuse a procedural default only if that claim is not itself procedurally defaulted).

[2]*Batson v. Kentucky*, 476 U.S. 79 (1986).

 

based on postconviction counsel's performance as to guilt-phase issues within 1 year after the remittitur issues on appeal from the district court order denying postconviction relief as to the convictions even where that postconviction proceeding resulted in a penalty phase retrial. *Id.* at 10, 501 P.3d at 948. Our decision in *Chappell* reiterated and applied several prior decisions explaining that the alleged "[i]neffective assistance of postconviction counsel can constitute good cause for an untimely and successive petition where postconviction counsel was appointed as a matter of right, if the postconviction-counsel claim is not itself untimely and therefore procedurally barred." *Id.* at 5-6, 501 P.3d at 946 (citing *Rippo v. State*, 134 Nev. 411, 423 P.3d 1084 (2018); *Lisle v. State*, 131 Nev. 356, 360, 351 P.3d 725, 728 (2015); *Huebler*, 128 Nev. at 198 n.3, 275 P.3d at 95 n.3; *State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225, 235, 112 P.3d 1070, 1077 (2005); *Hathaway v. State*, 119 Nev. 248, 252-53, 71 P.3d 503, 506 (2003)). Thomas thus had to assert first postconviction counsel's ineffectiveness as good cause to raise procedurally barred claims challenging his convictions within 1 year after the remittitur issued in *Thomas II* on March 9, 2004. Because the instant petition was filed well beyond that date, the claims about first postconviction counsel's performance were untimely and could not provide good cause. Accordingly, the district court did not err in denying the petition as to the asserted grounds for relief related to the issue of Thomas's guilt because those grounds are procedurally barred under NRS 34.726(1), NRS 34.810(1)(b)(2), and NRS 34.810(2).

*Thomas timely raised good-cause claims based on second postconviction counsel's alleged ineffective assistance*

Thomas argues that counsel's ineffectiveness during the second postconviction proceedings provides good cause to raise procedurally barred

grounds for relief from the death sentences imposed during the penalty phase retrial.[3] Because the second postconviction petition was Thomas's first opportunity to collaterally challenge the death sentences imposed at the penalty phase retrial, he had the statutory right to appointed counsel to assist him in that effort. *See* NRS 34.820(1)(a) (requiring the district court to appoint postconviction counsel "[i]f a petitioner has been sentenced to death and the petition is the first one challenging the validity of the petitioner's . . . sentence"); *Chappell*, 137 Nev., Adv. Op. 83 at 11 n.2, 501 P.3d at 948 n.2 ("The appointment of second postconviction counsel . . . was statutorily mandated only because the petition was the first one challenging the validity of the death sentence imposed at the penalty phase retrial."). As a result, he can assert counsel's ineffectiveness in challenging the validity of the death sentences as good cause to raise procedurally barred grounds for relief from those sentences. *See Crump v. Warden*, 113 Nev. 293, 304-05, 934 P.2d 247, 254 (1997) (recognizing that ineffective assistance of postconviction counsel may establish good cause and prejudice to file second postconviction petition where first postconviction petition

---

[3]Thomas also argues that second postconviction counsel's ineffectiveness and the district court's denial of funding for second postconviction counsel's investigation excuse any delay in raising good-cause claims based on first postconviction counsel's ineffectiveness. As we recently explained in *Chappell*, the argument based on second postconviction counsel's ineffectiveness lacks merit, given that Thomas did not have a right to the appointment of second postconviction counsel to litigate guilt-phase claims. *See Chappell*, 137 Nev., Adv. Op. 83 at 11 n.2, 501 P.3d at 948 n.2. And because his contention that the district court erred in denying funding could have been addressed in the appeal from the order denying that petition, it cannot provide good cause to excuse the procedural bars with regard to this petition. *See* NRS 34.810(1)(b)(2); *Hathaway*, 119 Nev. at 252-53, 71 P.3d at 506.

counsel was appointed as a matter of right). Thomas asserted second postconviction counsel's ineffectiveness as good cause to raise procedurally barred grounds for relief from the death sentences within 1 year after the second-postconviction-counsel claims became available (i.e., when remittitur issued in *Thomas IV*). *See Rippo*, 134 Nev. at 419-22, 423 P.3d at 1095-97.[4] Thus, Thomas has "met the first component of the good-cause showing required under NRS 34.726(1)." *Id.* at 422, 423 P.3d at 1097. But he also had to satisfy the second component of the showing required under NRS 34.726(1)(b)—undue prejudice—and the cause-and-prejudice showings required under NRS 34.810(1)(b) and NRS 34.810(3). To do so, Thomas had to prove that his second-postconviction-counsel claims have merit, i.e., that had second postconviction counsel raised the underlying trial- and appellate-counsel claims related to the penalty phase retrial, he would have shown "that the sentence was imposed, in violation of the Constitution of the United States or the Constitution or laws of this State." *Id.* at 424-25, 423 P.3d at 1098-99.

*Only two of Thomas's claims regarding second postconviction counsel's ineffectiveness warrant an evidentiary hearing*

To determine whether a postconviction-counsel claim has merit, this court has adopted the two-part test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires the petitioner to demonstrate both deficient performance and prejudice. *Rippo*, 134 Nev. at 424-25, 423 P.3d at 1098-99. So, when a postconviction-counsel claim is based on the omission of a trial- or appellate-counsel claim, "the petitioner

---

[4]Thomas has also demonstrated that he could not raise these claims earlier, one of the two showings required to overcome the presumption of prejudice to the State for statutory laches pursuant to NRS 34.800(2).

must prove the ineffectiveness of both attorneys." *Id.* at 424, 423 P.3d at 1098. Thus, the merits of the procedurally barred grounds for relief are often intertwined with the merits of the postconviction-counsel claim asserted as good cause and prejudice. *Chappell*, 137 Nev., Adv. Op. 83 at 15, 501 P.3d at 950. Accordingly, we address the merits of the procedurally barred grounds for relief only in that context. *Id.*

Before turning to Thomas's postconviction-counsel claims, we must address the adequacy of Thomas's pleading below. In his petition, Thomas detailed how *penalty phase counsel* provided ineffective assistance, but he did not describe how *second postconviction counsel* should have litigated the second petition beyond a bare assertion that postconviction counsel's ineffectiveness provides good cause to raise some penalty-phase claims for the first time and to re-raise others because they were inadequately litigated. As we recently reiterated in *Chappell*, this kind of sparse pleading does not satisfy the provisions of NRS Chapter 34 that "require[ ] a petitioner to identify the applicable procedural bars for *each* claim presented and the good cause that excuses those procedural bars" or "[t]he specificity required to plead an ineffective-assistance claim as good cause" as reflected in the *Strickland* standard. 137 Nev., Adv. Op. 83 at 13, 501 P.3d at 949-50; *see also Evans v. State*, 117 Nev. 609, 647, 28 P.3d 498, 523 (2001) (explaining that petitioner's appellate briefs must address ineffective-assistance claims with specificity, not just "in a *pro forma*, perfunctory way" or with a "conclusory, catchall" statement that counsel provided ineffective assistance), *overruled on other grounds by Lisle*, 131 Nev. at 366 n.5, 351 P.3d at 732 n.5. We address Thomas's claims to the extent that he met his pleading burden.

The pleading requirements also inform the district court's decision whether to conduct an evidentiary hearing. We have "long recognized a petitioner's right to a postconviction evidentiary hearing when the petitioner asserts claims supported by specific factual allegations not belied by the record that, if true, would entitle him to relief." *Berry v. State*, 131 Nev. 957, 967, 363 P.3d 1148, 1154 (2015) (quoting *Mann v. State*, 118 Nev. 351, 354, 46 P.3d 1228, 1230 (2002)).

*Failure to present certain mitigation evidence*

Thomas argues that second postconviction counsel did not adequately challenge penalty phase counsel's effectiveness with respect to the mitigation case presented at the penalty phase retrial. Thomas argues that second postconviction counsel also should have attacked penalty phase counsel's failure to present evidence painting a more comprehensive picture of Thomas's childhood and his cognitive deficits. We conclude that the district court erred in denying this claim without conducting an evidentiary hearing.

Thomas supported his claim with exhibits that contrasted the evidence proffered with the first postconviction petition challenging the original death sentences, the evidence presented at the penalty phase retrial, and the evidence he now alleges that penalty phase counsel and second postconviction counsel should have discovered and proffered. *See Chappell*, 137 Nev., Adv. Op. 83 at 15, 501 P.3d at 950 (requiring petitioner to support ineffective-assistance-of-postconviction-counsel claim with explanation of "how postconviction counsel's performance was objectively unreasonable and how postconviction counsel's acts or omissions prejudiced the petitioner in the prior postconviction proceeding"). The breadth and depth of the mitigation evidence proffered with the instant petition stands in stark contrast to the mitigation case presented at the penalty phase

SUPREME COURT
OF
NEVADA

(O) 1947A

retrial and mitigation evidence offered in support of the penalty-phase-counsel claim asserted in the second postconviction petition. The jury in the original penalty hearing found *no* mitigating circumstances based on a defense mitigation case that relied primarily on an evaluation by Dr. Kinsora and testimony from Thomas's mother, Georgia. In particular, Dr. Kinsora opined that Thomas was an emotionally disturbed child with learning difficulties and antisocial personality traits likely stemming from neurological dysfunction due to fetal alcohol exposure and his upbringing. And Georgia testified that she strictly disciplined Thomas, she may have paid less attention to him after the birth of her youngest son, and Thomas's father abused him. Counsel called additional family members to testify at the penalty phase retrial about Thomas's upbringing and conversion to Christianity and presented a psychological assessment that suggested Thomas suffers from cognitive impairments associated with Fetal Alcohol Spectrum Disorder (FASD), but the mitigation case still focused largely on Georgia's testimony. This time, one or more jurors found three mitigating circumstances relevant to Thomas's upbringing and cognitive functions—that he suffered learning and emotional disabilities, he found religion, and he had been denied by his father. When second postconviction counsel alleged that counsel provided ineffective assistance with respect to the mitigation case presented at the penalty phase retrial, the supporting allegations focused predominantly on evidence of Thomas's neurological deficits due to FASD to explain his propensity toward impulsivity and dysregulation of aggressive behavior, which carried a significant risk of opening the door to unfavorable rebuttal evidence had the evidence been presented at the penalty phase retrial. *Thomas IV*, 2016 WL 4079643, at *2.

SUPREME COURT
OF
NEVADA

(O) 1947A

In contrast, the factual allegations supporting the second-postconviction-counsel claim in the current petition present a far more compelling mitigation case. For example, the instant petition includes specific factual allegations (supported by affidavits from several generations of Thomas's immediate and extended family) that Georgia beat Thomas as severely and as often as his father did, unlike Georgia's testimony at the penalty phase retrial. The new allegations do not depict her as merely inattentive or unduly strict, but instead as callously neglectful of her responsibilities toward Thomas's care and well-being and capable of excessive abuse. They describe Thomas as neglected and detail how his struggles for attention were met with violence. Additionally, the pleadings allege that Thomas suffered head trauma, exhibited cognitive delays as a child, and had not learned proper socialization. These circumstances resulted in Thomas believing there was something wrong with him and being emotionally numb. Expert psychological reports submitted with the third petition opine that Thomas suffers from Alcohol Related Neurodevelopmental Disorder (ARND),[5] learning disabilities, poor cognitive function, and the inability to control his anger and handle stress. The psychological evidence submitted with the current petition considers the environmental factors that contributed to Thomas's conditions and describes the effect that abuse, neglect, and lack of psychological intervention had on his ability to control his reactions. This evidence goes far beyond the report included with the second postconviction petition, which did not illuminate how childhood abuse and neglect and Thomas's

---

[5]ARND is one of several disorders caused by fetal alcohol exposure. *Fetal Alcohol Spectrum Disorders (FASDs)*, Centers for Disease Control and Prevention, http://cdc.gov/ncbddd/fasd/facts.html.

psychological conditions impacted his development and behavior. The evidence proffered with the current petition arguably also explains Thomas's continued misconduct in prison, which was potent other matter evidence introduced by the State at the penalty phase retrial.

Thomas's allegations were sufficient to warrant an evidentiary hearing on whether penalty phase counsel and second postconviction counsel performed deficiently. Because the breadth of potential mitigating evidence is virtually limitless, merely developing more evidence than what was presented in prior proceedings is generally insufficient to show that prior counsel were deficient. *In re Reno*, 283 P.3d 1181, 1211 (Cal. 2012). But the petition before us alleges more than that. It asserts that penalty phase counsel presented a mitigation case at the penalty phase retrial that was comparable to the case presented at the first penalty hearing, whereas reasonably effective counsel, who was aware that the original mitigation presentation was unsuccessful, would be expected to seize upon the opportunity to develop more compelling mitigation evidence. And where penalty phase counsel fails to exploit that chance, reasonably effective postconviction counsel should have presented it to challenge penalty phase counsel's effectiveness. Thomas has shown that more compelling mitigation evidence was discoverable, much of it through the reasonably prudent practice of interviewing members of Thomas's immediate and extended family, reviewing school records, and employing psychological experts who can provide a thorough assessment based on testing, interviews, and the evidence discovered during counsel's investigation.

We further conclude that Thomas alleged sufficient facts not belied by the record to suggest he was prejudiced by counsel's performance. A more comprehensive approach, as presented in Thomas's pleadings, could

have provided context for Thomas's behavior. The psychological evidence suggests that Thomas suffered from several neurocognitive disorders from his birth and that the effects of these disorders were exacerbated by his lack of structure and a support system to deal with them. Lastly, a more complete depiction of Thomas's youth and home life stood a much greater chance of softening Thomas in the eyes of the jurors and possibly position him for mercy.

Based on the allegations in the petition, we conclude that the district court erred in denying this claim without conducting an evidentiary hearing. On remand, the district court should focus on whether objectively reasonable second postconviction and penalty phase counsel should have discovered the aforementioned evidence, whether the evidence is credible, and whether the introduction of the evidence would have had a reasonable probability of altering the outcome of the proceedings.

*Failure to challenge veniremembers based on unwillingness to consider mitigation or all available sentences*

Thomas asserts that second postconviction counsel should have claimed that reasonably effective penalty phase counsel would have challenged Jurors Cunningham, McIntosh, and Jones because they indicated they would not consider mitigating evidence; Jurors Adona, Cunningham, and Jones because they were unlikely to consider his background as a mitigating circumstance; Jurors Cunningham and Adona because they would not consider a sentence with parole; and Juror Shaverdian because she had expressed bias in favor of the victims' families.

For the most part, Thomas's allegations would not entitle him to relief because they are insufficient to demonstrate that penalty phase counsel acted unreasonably during jury selection for the penalty phase retrial. Decisions regarding the questioning of potential jurors generally

involve trial strategy. *See, e.g., Stanford v. Parker*, 266 F.3d 442, 453-55 (6th Cir. 2001) (observing that defendant has right to life-qualify jury upon request but not doing so may be reasonable trial strategy); *Brown v. Jones*, 255 F.3d 1273, 1279 (11th Cir. 2001) (remarking that it was reasonable trial strategy for counsel to focus jurors' attention on the death penalty as little as possible and therefore not life-qualify jurors); *Carmago v. State*, 55 S.W.3d 255, 260 (Ark. 2001) ("[T]he decision to seat or exclude a particular juror may be a matter of trial strategy or technique."). A court's review of counsel's strategic decisions is "highly deferential," taking into account the "countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689; *see also Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." (internal quotation marks omitted)).

Applying that deferential standard here, we conclude that penalty phase counsel could have reasonably concluded that McIntosh, Jones, Adona, and Shaverdian were favorable to the defense for other reasons. *See Knox v. Johnson*, 224 F.3d 470, 479 (5th Cir. 2000) (recognizing that potential jurors may hold differing views on different aspects of criminal prosecutions and that counsel is not necessarily ineffective for failing to peremptorily challenge a juror with pro-prosecution views in one aspect if that juror has pro-defense views in another). For instance, McIntosh was open to considering how Thomas behaved while incarcerated, and Jones considered Thomas's state of mind at the time of the crime to be a more powerful mitigating circumstance than Thomas's childhood. Both of these views were consistent with the defense's mitigation case and belie

Thomas's broad argument that these jurors would not consider mitigating evidence. Adona acknowledged that he could consider mitigating evidence and would not automatically vote for the death penalty. And Shaverdian was generally more ambivalent about the death penalty than most of the other veniremembers and was more likely to consider Thomas's background and upbringing as mitigating circumstances. Given that these jurors had appeal to the defense apart from their noted drawbacks, it is not clear that penalty phase counsel acted unreasonably in not challenging them.

However, we conclude that Thomas's allegations are sufficient to warrant an evidentiary hearing with respect to whether second postconviction counsel should have challenged penalty phase counsel's performance during voir dire with respect to Juror Cunningham. Some of the views this juror expressed in her questionnaire suggested that she would be unable to discharge her duties fairly and impartially by applying the law to the facts of the case. *See Lamb v. State*, 127 Nev. 26, 37, 251 P.3d 700, 707 (2011) ("The purpose of jury voir dire is to discover whether a juror will consider and decide the facts impartially and conscientiously apply the law as charged by the court." (internal quotation marks omitted)). In particular, in her questionnaire, she indicated that she was generally in favor of the death penalty, was not open to considering a sentence that had the possibility of parole, and could not consider mitigating circumstances. The State conducted a very limited voir dire of Juror Cunningham that did not explore or seek further comment on these issues and the defense did not conduct voir dire of Juror Cunningham at all. Based on these circumstances, objectively reasonable counsel may have needed to inquire further, ask the trial court to remove this juror for cause, or use a peremptory challenge to remove her. And as Cunningham sat on the jury,

Thomas may have been prejudiced by penalty phase counsel's omissions in this respect. *See Ross v. Oklahoma*, 487 U.S. 81, 85 (1988) (recognizing that a defendant is entitled to a new sentencing proceeding if he was sentenced to death by a jury that included a biased juror); *cf. Wesley v. State*, 112 Nev. 503, 511, 916 P.2d 793, 799 (1996) (stating that "[i]f the impaneled jury is impartial, the defendant cannot prove prejudice" resulting from district court's limitation of voir dire). Because these facts supporting a penalty-phase-counsel claim appear from the record, it is possible that second postconviction counsel knew or should have known of them and unreasonably failed to assert a claim based on them. It also is possible that second postconviction counsel made a reasonable decision to omit the claim based on information not in the record or an evaluation of the relative strength of other claims. *See Reno*, 283 P.3d at 1210-11. Accordingly, Thomas alleged sufficient good cause based on second postconviction counsel's omission of this penalty-phase-counsel claim and prejudice in that the claim was potentially meritorious. The district court therefore erred in denying this claim as procedurally barred without conducting an evidentiary hearing.

*Failure to litigate claim regarding jury misconduct*

Thomas argues that second postconviction counsel should have investigated and alleged that penalty phase counsel provided ineffective assistance by failing to assert that jurors engaged in misconduct. According to Thomas, the jurors improperly discussed Thomas's release from incarceration, closed their minds to possible sentences before deliberation, and learned of his prior death sentences before deliberation. We conclude that the district court did not err in denying this claim without conducting an evidentiary hearing.

Thomas has not demonstrated that second postconviction counsel unreasonably omitted a meritorious claim. The juror misconduct alleged by Thomas generally falls into the category of intrinsic juror misconduct—"conduct by jurors contrary to their instructions or oaths."[6] *Meyer v. State*, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003) (recognizing that intrinsic juror misconduct involves, among other things, jurors not following admonitions or instructions, basing their decision on evidence other than that admitted at trial, or discussing sentencing or the defendant's failure to testify). Intrinsic juror misconduct will justify a new trial "only in extreme circumstances" because it "can rarely be proven without resort to inadmissible juror affidavits that delve into the jury's deliberative process." *Id.* at 565, 80 P.3d at 456. Thus, any juror statements about disregarding instructions, closing their minds to sentencing options, and discussing the death sentences imposed in the first penalty phase trial would have been inadmissible. *See* NRS 50.065(2)(a) (prohibiting a court from considering testimony or an affidavit of a juror about "the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith"); *Meyer*, 119 Nev. at 562, 80 P.3d at 454 ("[I]ntra-jury or intrinsic influences involve improper discussions among jurors . . . that are generally not admissible to impeach a verdict.").

---

[6]Juror Cunningham's alleged statements during deliberations, in which she relayed statements from her family member about child abusers receiving parole after 6 years, may constitute extrinsic misconduct, *see Meyer*, 119 Nev. at 562, 80 P.3d at 454, but her statement that Thomas could be paroled if sentenced to life without parole was her own inference and thus was not extrinsic misconduct, *see Valdez v. State*, 124 Nev. 1172, 1186-87, 196 P.3d 465, 475 (2008) (concluding that a juror closing his or her mind to sentencing options constituted intrinsic misconduct).

It thus would have been extremely difficult for second postconviction counsel (or penalty phase counsel) to prove through admissible evidence the nature of the juror misconduct and a reasonable probability that it affected the verdict. *See Meyer*, 119 Nev. at 565, 80 P.3d at 456. The record also belies some of the jurors' recollections offered many years later. For example, as even Thomas agrees, neither the trial court's instructions nor counsel's arguments informed the jurors that Thomas had been sentenced to death in a prior proceeding. Based on the record, we conclude that Thomas's allegations are not sufficient to establish that second postconviction counsel's omission of this claim was objectively unreasonable. Accordingly, the district court did not err in denying this claim without conducting an evidentiary hearing.

*Failure to allege that the State did not comply with SCR 250*

Thomas argues that the State did not comply with SCR 250's notice requirements and failed to file a new notice of its intent to seek the death penalty before the penalty phase retrial. He argues that penalty phase trial and appellate counsel should have raised the issue and second postconviction counsel should have litigated their failure to do so. We disagree because the underlying legal argument lacks merit.

The State filed a timely notice of intent to seek the death penalty in 1996. *See* SCR 250(II)(A)(1)-(3) (1993) (providing that if the State had not decided whether to seek the death penalty at the time of arraignment, the State had to file a notice of intent not less than 15 days before the date set for trial). This court's decision in *Thomas II* granting a penalty phase retrial did not affect the previously filed notice of intent, which was timely even under the version of SCR 250 in effect when the penalty phase retrial commenced, *see* SCR 250(4)(c) (2000) (requiring that the notice of intent be filed no later than 30 days after the filing of the

information or indictment). And nothing in SCR 250 required a new notice before the penalty phase retrial. Thomas therefore did not allege sufficient facts to show that second postconviction counsel acted unreasonably in omitting these trial- and appellate-counsel claims or that he was prejudiced by postconviction counsel's omission. Thus, the district court did not err in denying this claim as procedurally barred without conducting an evidentiary hearing.

*Failure to raise a fair-cross-section challenge*

Thomas argues that second postconviction counsel should have asserted that penalty phase trial and appellate counsel should have objected to the venire on the ground that it was not composed of a fair cross section of the community. We conclude that Thomas did not allege sufficient facts to show that he would be entitled to relief.

To establish a prima facie violation of the fair-cross-section requirement, a defendant must demonstrate that (1) the group he alleges was "excluded is a distinctive group in the community;" (2) the group's representation "in jury venires is not fair and reasonable in relation to the number of such persons in the community;" and (3) the underrepresentation is due to "systematic exclusion of the group in the jury-selection process." *Rippo v. State*, 122 Nev. 1086, 1097, 146 P.3d 279, 286 (2006) (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). Although Thomas has identified a distinctive group, he has not alleged sufficient facts to show either underrepresentation or systematic exclusion. Because Thomas has not established a prima facie violation of the fair-cross-section requirement, he also did not demonstrate that second postconviction counsel unreasonably omitted the trial- or appellate-counsel claim. Accordingly, the district court did not err in denying these claims as procedurally barred without conducting an evidentiary hearing.

 

*Failure to move to exclude evidence of prior convictions*

Thomas argues that second postconviction counsel should have claimed that penalty phase counsel provided ineffective assistance by failing to move to exclude evidence of his prior convictions on the grounds that one of the convictions was a juvenile conviction and the other was tainted by an erroneous identification.[7] We conclude that Thomas has not demonstrated that the omitted claim was one that any reasonably competent postconviction counsel would have raised, given that the evidentiary issues underlying the claim lack merit.

First, this court held in *Johnson v. State* that juvenile convictions are admissible during a capital penalty hearing. 122 Nev. 1344, 1353, 148 P.3d 767, 774 (2006). Given that *Johnson* was decided more than a year before Thomas filed his second postconviction petition, it was not objectively unreasonable for second postconviction counsel to omit a trial- or appellate-counsel claim based on their failure to argue against admission of Thomas's juvenile record. *See Reno*, 283 P.3d at 1211-12 (explaining that habeas counsel was not required to raise claims that had been previously rejected in other cases in order to provide effective assistance); *cf. Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006) ("Trial counsel need not lodge futile objections to avoid ineffective assistance of counsel claims."). Second, the evidentiary challenges to the other conviction, obtained in 1990, are unavailing. The 1990 conviction was "no longer open to direct or

_____

[7]Thomas also argues that the district court erred in denying his claim that the trial court should have excluded evidence about his juvenile convictions at the penalty phase retrial. The district court did not err, given that Thomas did not allege good cause for not raising this claim on appeal from the judgment entered after the penalty phase retrial. *See* NRS 34.810(1)(b)(2).

collateral attack in its own right." *See Lackawanna Cty. Dist. Attorney v. Cross*, 532 U.S. 394, 402 (2001) (holding that petitioner seeking relief under 28 U.S.C. § 2254 may not collaterally challenge a prior state conviction used to enhance a sentence for the conviction under attack). Thomas also has not alleged that the 1990 conviction was constitutionally infirm on its face, *Dressler v. State*, 107 Nev. 686, 697-98, 819 P.2d 1288, 1295-96 (1991), or that it was obtained without the assistance of counsel or a valid waiver of the right to counsel, *Hamlet v. State*, 85 Nev. 385, 387, 455 P.2d 915, 916 (1969). And because the State presented the prior judgment of conviction, he cannot show that the evidence was impalpable or highly suspect. *See Nunnery v. State*, 127 Nev. 749, 769, 263 P.3d 235, 249 (2011) (noting that evidence may be excluded from penalty hearing if impalpable or highly suspect). For these reasons, it was not objectively unreasonable for second postconviction counsel to omit an ineffective-counsel claim based on penalty phase trial and appellate counsel's failure to challenge the 1990 conviction. Therefore, the district court did not err in denying this claim as procedurally barred without conducting an evidentiary hearing.

*Failure to argue that excessive courtroom security during the penalty phase retrial prejudiced the defense*

Thomas argues that second postconviction counsel should have claimed that penalty phase trial and appellate counsel provided ineffective assistance by failing to challenge excessive security during the penalty phase retrial. He asserts that he was visibly shackled, his mitigation witnesses appeared in shackles and prison clothing, and an overwhelming number of uniformed officers were in the courtroom.[8]

_____

[8]Thomas also argues that the trial court erred in permitting the security measures employed during the penalty phase retrial. The district

Thomas did not allege sufficient facts to demonstrate deficient performance by second postconviction counsel with respect to the omission of ineffective-assistance claims based on Thomas being shackled. Penalty phase counsel objected to the use of visible physical restraints on Thomas during the penalty phase retrial. The trial court recognized that a penalty phase retrial in a death penalty case came with a greater risk of flight and ensured that any restraints used with Thomas were not visible to the jurors. Based on this record, it was not objectively unreasonable for second postconviction counsel to omit a trial- or appellate-counsel claim based on the use of leg restraints on Thomas during the penalty phase retrial, despite the trial court's failure to hold a hearing. *See Nelson v. State*, 123 Nev. 534, 545, 170 P.3d 517, 525 (2007) (concluding that failure to hold hearing before requiring leg restraints was harmless where there was no record that any juror saw restraints and defendant was not made to walk in front of the jury in restraints).

Thomas also did not allege sufficient facts to demonstrate deficient performance by second postconviction counsel with respect to the omission of a trial- or appellate-counsel claim related to the restraints and prison clothing worn by some of the mitigation witnesses who testified at the penalty phase retrial. The controlling law at the time of the penalty phase retrial did not support a challenge by trial or appellate counsel, given that this court did not recognize a "constitutional right accorded to a

court did not err in denying this claim, given that Thomas did not allege good cause for not raising this issue on appeal from the judgment entered after the penalty phase retrial. *See* NRS 34.810(1)(b)(2).

defendant to have his prison witness[es] appear in civilian clothes."[9] *White v. State*, 105 Nev. 121, 123, 771 P.2d 152, 153 (1989). Although this court later concluded that "compelling an incarcerated witness to appear at trial in the garb of a prisoner may taint the fact-finding process," *Hightower v. State*, 123 Nev. 55, 59, 154 P.3d 639, 642 (2007), that decision came after Thomas's penalty phase retrial. Second postconviction counsel could not have demonstrated that trial and appellate counsel were ineffective for not "anticipat[ing] a change in the law." *Nika v. State*, 124 Nev. 1272, 1289, 198 P.3d 839, 851 (2008). Thomas also did not demonstrate prejudice from the witnesses' restraints and prison garb, given that each witness's testimony acknowledged that the witness was incarcerated with Thomas.

Lastly, it was not objectively unreasonable for second postconviction counsel to omit a trial- or appellate-counsel claim based on the number of officers in the courtroom given the totality of the circumstances surrounding the penalty phase retrial. In particular, Thomas had been convicted of two murders and sentenced to death before, faced potential death sentences, and was calling multiple prisoners as witnesses, one of whom was designated as high-risk. *See Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986) (recognizing that deployment of additional, conspicuous security personnel was not as inherently prejudicial as shackling a defendant). Therefore, the district court did not err in denying these claims without conducting an evidentiary hearing.

---

[9]Although the Ninth Circuit Court of Appeals recognized such a right in 1985, *Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir. 1985), that decision was not controlling in state court, *see Rahn v. Warden, Nev. State Prison*, 88 Nev. 429, 431, 498 P.2d 1344, 1345-46 (1972).

*Waiver of selection phase opening statement*

Thomas argues that penalty phase counsel should not have agreed to forgo opening statements before the second part of the bifurcated penalty phase retrial because it left the jury without proper guidance as to how it should consider the evidence that would be presented. To overcome the procedural bars to raising this claim for the first time in an untimely and successive petition, Thomas alleges that second postconviction counsel provided ineffective assistance by omitting it. We disagree.

Thomas did not allege sufficient facts to demonstrate deficient performance or prejudice based on second postconviction counsel's omission of this penalty-phase-counsel claim. First, reasonably competent postconviction counsel could decide to omit this claim because penalty phase counsel's strategy was reasonable, given that the trial court instructed the jury on how to properly consider the evidence introduced at the penalty phase retrial and counsel addressed the evidence in closing argument. Second, Thomas cannot demonstrate prejudice because the jury's decision between life and death was not close based on the evidence introduced at the penalty phase retrial and therefore there was not a reasonable probability of a different outcome but for penalty phase counsel's decision not to give an opening statement. The aggravating circumstances found are compelling. They show that Thomas, who had previously engaged in violent crimes, callously stabbed to death two former coworkers during the course of a robbery. And other evidence showed that the murders were not out of character—Thomas's criminal conduct escalated to include more violent conduct and eventually culminated in these murders, and he continued to engage in violent and disruptive behavior while incarcerated. While mitigation evidence was presented, it mostly mirrored the evidence presented at the first penalty hearing that a jury found unpersuasive or

Supreme Court
of
Nevada

(O) 1947A

included evidence that was significantly undermined by evidence of Thomas's violent behavior while incarcerated. Accordingly, the district court did not err in denying this claim as procedurally barred without conducting an evidentiary hearing.

*Failure to challenge limitation of a defense mitigation theory*

Thomas argues that second postconviction counsel should have claimed that penalty phase counsel provided ineffective assistance when they did not challenge a trial court decision limiting their ability to argue mitigation based on evidence that Thomas's girlfriend drove him and Hall to and from the Lone Star Steakhouse but had not been charged with any crime. We conclude that this claim lacks merit at both levels (postconviction counsel and penalty phase counsel).

Thomas cannot demonstrate deficient performance at either level because the legal premise supporting the asserted mitigation theory is tenuous at best. *See Nika*, 124 Nev. at 1289, 198 P.3d at 851 (recognizing that counsel is not ineffective for failing to anticipate changes in controlling precedent). In particular, this court has not held that evidence of a codefendant's sentence, let alone whether another potential participant was charged with a crime, constitutes mitigation evidence and therefore must be admitted. Rather, this court has held only that the district court has the discretion to admit such evidence as "any other matter which the court deems relevant . . ." under NRS 175.552. *Harte v. State*, 132 Nev. 410, 412-13, 373 P.3d 98, 100-01 (2016); *Flanagan v. State*, 107 Nev. 243, 247-48, 810 P.2d 759, 762 (1991). Thomas further has not demonstrated prejudice. Regardless of what Thomas now alleges about his girlfriend's involvement in planning and carrying out the robbery, her involvement was not similar to Thomas's. Thomas and Hall entered the business and conducted the robbery. Thomas directed Hall during the robbery, and Thomas ultimately



stabbed the two victims to death. Considering those circumstances and the evidence in aggravation, we conclude there was no reasonable probability of a different outcome at the penalty phase retrial if the defense had been allowed to point to his girlfriend's involvement and her disparate treatment by investigators and prosecutors as a mitigating circumstance. Therefore, the district court did not err in denying this claim as procedurally barred without conducting an evidentiary hearing.

*Failure to challenge instances of prosecutorial misconduct*

Thomas argues that second postconviction counsel should have alleged that penalty phase and appellate counsel provided ineffective assistance by neglecting to challenge several instances of prosecutorial misconduct during the penalty phase retrial. These claims lack merit for the reasons discussed below, and therefore, the district court did not err in denying them without conducting an evidentiary hearing.

First, Thomas argues that penalty phase counsel should have objected to an inflammatory presentation, in which the victims' high school prom photographs were digitally morphed into photographs of their bodies.[10] The presentation was objectionable as an improper attempt to inflame passion and prejudice in the jury. *See Flanagan v. State*, 104 Nev. 105, 107, 754 P.2d 836, 837 (1988) ("At the sentencing phase, it is most important that the jury not be influenced by passion, prejudice, or any other arbitrary factor."); *cf. Watters v. State*, 129 Nev. 886, 890, 313 P.3d 243, 247 (2013) ("[A] PowerPoint may not be used to make an argument visually that

_____

[10]To the extent Thomas also argues that the district court erred in denying his standalone claim of prosecutorial misconduct, we disagree because Thomas did not allege good cause for not raising the claim on appeal from the judgment entered after the penalty phase retrial. *See* NRS 34.810(1)(b)(2).

would be improper if made orally."). But that does not necessarily mean that counsel had to object to provide effective assistance. Indeed, reasonably competent counsel could have believed that an objection would draw more attention to the presentation. And even if objectively reasonable penalty phase counsel would have objected, that does not mean the ineffective-assistance claim is one that any reasonably competent postconviction counsel would have brought. *See Reno*, 283 P.3d at 1210 (stating that "the mere omission of a claim developed by new counsel does not raise a presumption that prior habeas corpus counsel was incompetent" (quotation marks omitted)). In particular, the penalty-phase-counsel claim likely would have failed on the prejudice prong because, as discussed above, the jury's decision between life and death was not close given the evidence presented. Thus, there was not a reasonable probability of a different outcome at the penalty phase retrial had counsel objected to the photographic presentation.

Second, Thomas argues that second postconviction counsel should have alleged that penalty phase counsel provided ineffective assistance by not objecting to the State's cross-examination of Georgia on the ground that the State violated the bifurcation order and prematurely elicited unfavorable character evidence. Thomas did not allege sufficient facts to demonstrate deficient performance by second postconviction counsel. Reasonably competent postconviction counsel could decide to omit this penalty-phase-counsel claim because this court concluded on direct appeal that the State's cross-examination was not objectionable. *See Thomas III*, 122 Nev. at 1368-69, 148 P.3d at 733; *see also Rippo v. State*, 134 Nev. 411, 436, 423 P.3d 1084, 1107 (2018) (concluding that postconviction counsel's failure to raise claims that had been rejected on

direct appeal did not fall below an objective standard of reasonableness given that the law-of-the-case doctrine barred further litigation of those claims); *Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006) (recognizing that counsel need not make futile objections to not be held ineffective).

Third, Thomas argues that second postconviction counsel should have alleged that penalty phase counsel provided ineffective assistance by failing to object to a comment by the prosecutor on the ground that it incorrectly defined mitigating circumstances. We disagree. It was not objectively unreasonable for second postconviction counsel to omit this ineffective-assistance claim where penalty phase and appellate counsel raised the issue, and therefore, the record belies any allegation of ineffective assistance on their part. *See Reno*, 283 P.3d at 1210 (indicating that allegations of ineffective assistance by prior counsel in omitting claims were belied by the record where those claims were actually raised on appeal or in a prior habeas petition).

Fourth, Thomas argues that second postconviction counsel should have alleged that penalty phase counsel provided ineffective assistance by not objecting to an argument that compared the victims' rights with those of the defendant and asked the jury to consider the victims' last thoughts. The comments suggesting that the victims were not afforded the same rights or process as Thomas were improper appeals to the passions and prejudices of the jury. *See Berry v. State*, 882 So. 2d 157, 164 (Miss. 2004) (concluding that comparison of victim's rights to defendant's rights was egregious and "possibly rose to the level of prosecutorial misconduct"). But even assuming that penalty phase counsel should have objected, there was no reasonable probability of a different outcome given

the circumstances of the murders, the compelling aggravating circumstances found for each murder, and Thomas's weak mitigation case. And Thomas cannot demonstrate deficient performance by second postconviction counsel in omitting a claim based on the comments about the victims' thoughts. Those comments were not improper because they asked the jurors to consider the victims' final moments without asking them to place themselves in the victims' positions. *See Williams v. State*, 113 Nev. 1008, 1020, 945 P.2d 438, 445 (1997) (noting that a prosecutor is not forbidden from inviting the jury to consider the victim's final moments), *overruled on other grounds by Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000); *see also Epps v. State*, 901 F.2d 1481, 1483 (8th Cir. 1990) (concluding that counsel was not ineffective for failing to object to prosecutorial statements that were not, in fact, improper).

Fifth, Thomas argues that second postconviction counsel should have alleged that penalty phase counsel provided ineffective assistance by not challenging the prosecutor's statements characterizing his allocution as "lip service" and asserting that criminals are selfish and do not feel remorse. Thomas cannot demonstrate deficient performance by second postconviction counsel or prejudice. Although the prosecutor's comments were objectionable because they "ridicule[d] or belittle[d] the defendant or the case," *Earl v. State*, 111 Nev. 1304, 1311, 904 P.2d 1029, 1033 (1995); *see Browning v. State*, 124 Nev. 517, 534, 188 P.3d 60, 72 (2008) (noting that a prosecutor's disparagement of defense counsel or the legitimate tactics of defense counsel is improper conduct), that does not necessarily mean that penalty phase counsel had to object to provide reasonably competent assistance. Given its brevity, the prosecutor's comment arguably did not "so infect[ ] the proceedings with unfairness as to make the results a denial

of due process," *Hernandez v. State*, 118 Nev. 513, 525, 50 P.3d 1100, 1108 (2002), and an objection may have only served to emphasize the prosecutor's point. Objectively reasonable counsel therefore could have decided not to object. Additionally, there is no reasonable probability of a different outcome given the circumstances of the murders, the compelling aggravating circumstances found for each murder, and the mitigation case presented at the penalty phase retrial. For these reasons, it was not objectively unreasonable for second postconviction counsel to omit this ineffective-assistance claim. *See Reno*, 283 P.3d at 1210 ("Habeas corpus counsel, like appellate counsel, 'performs *properly* and *competently* when he or she exercises discretion and presents *only* the strongest claims instead of every conceivable claim.'" (quoting *In re Robbins*, 959 P.2d 311, 338 (Cal. 1998))). In sum, the district court did not err in denying these claims as procedurally barred without conducting an evidentiary hearing.

*Failure to raise trial-error claims on appeal from the judgment entered after the penalty phase retrial*

Thomas asserts that second postconviction counsel should have claimed that appellate counsel provided ineffective assistance by failing to raise trial errors that occurred during the penalty phase retrial. We decline to address this claim because Thomas's appellate brief does not present relevant authority or cogent argument beyond generally listing the alleged trial-error claims omitted by appellate counsel. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).

*Failure to allege judicial bias*

Thomas argues that second postconviction counsel should have claimed that this court did not conduct a fair and adequate review in *Thomas III* because Justice Nancy Becker participated in the decision while

negotiating for employment with the Clark County District Attorney's office.

Thomas did not demonstrate deficient performance by second postconviction counsel. Whether Justice Becker was actively negotiating with the district attorney's office when this court decided *Thomas III* is purely speculative. Regardless, appellate counsel raised the issue in a motion, and this court concluded that even if Thomas had presented an arguable basis for questioning Justice Becker's participation in the court's decision, the result would have been the same because all of the justices agreed that the death sentences should be affirmed. *Thomas v. State*, Docket No. 46509 (Order Denying Motion, June 29, 2007). Given this court's prior decision on this allegation of judicial bias, it was not objectively unreasonable for second postconviction counsel to omit this issue.[11] Therefore, the district court did not err in denying this claim as procedurally barred without conducting an evidentiary hearing.

*Cumulative error as good cause*

Throughout his appellate brief, Thomas argues that the district court should have considered several errors and claims raised and rejected in *Thomas I* and *Thomas III* so that their effect is weighed cumulatively

---

[11]This court's handling of the bias allegation in *Thomas III* is consistent with the United States Supreme Court's decision almost 10 years later in *Williams v. Pennsylvania*, 579 U.S. 1 (2016). There, the Court indicated that the opportunity for "an appellate panel to reconsider [an appellate issue] without the participation of the interested member . . . permit[s] judges to probe lines of analysis or engage in discussions they may have felt constrained to avoid in their first deliberations" and remedies participation by a panel member who should have been disqualified. *Id.* at 16. Although this court declined to rehear *Thomas III*, it did so after concluding, without Justice Becker's participation, that the result would have been the same.

SUPREME COURT
OF
NEVADA

(O) 1947A

32

with other claims for which he can avoid the procedural bars. Because these claims were rejected previously on the merits, they cannot logically be used to support a cumulative-error claim. *See Rippo*, 134 Nev. at 436, 423 P.3d at 1107; *see also Reno*, 283 P.3d at 1223-24 (rejecting "cumulative error" as good cause where prior claims were rejected on the merits). Therefore, he has not demonstrated good cause to overcome the procedural bars to those claims.

Hurst v. Florida *as good cause to raise an instructional error at the penalty phase retrial*

Relying on *Hurst v. Florida*, 577 U.S. 92 (2016), Thomas argues that the trial court erred in not instructing the jury during the penalty phase retrial that it had to determine that the mitigating circumstances do not outweigh the aggravating circumstances beyond a reasonable doubt before it imposed a sentence of death. He further argues that *Hurst* provides good cause for not raising this instructional error on appeal or in the second postconviction petition. We disagree. This court has rejected the interpretation of *Hurst* advocated by Thomas. *See, e.g., Castillo v. State*, 135 Nev. 126, 442 P.3d 558 (2019); *Jeremias v. State*, 134 Nev. 46, 58, 412 P.3d 43, 54 (2018). Therefore, *Hurst* does not provide good cause. And to the extent that Thomas argues that second postconviction counsel provided ineffective assistance by omitting this and related instructional-error claims, we again disagree because the legal premise underlying those claims lacks merit—the weighing of aggravating and mitigating circumstances is not subject to the beyond-a-reasonable-doubt standard. *See, e.g., Nunnery v. State*, 127 Nev. 749, 770-76, 263 P.3d 235, 250-53 (2011); *McConnell v. State*, 125 Nev. 243, 254, 212 P.3d 307, 314-15 (2009); *accord Kansas v. Carr*, 577 U.S. 108, 119 (2016) ("[O]f course the ultimate question whether mitigating circumstances outweigh aggravating

circumstances is mostly a question of mercy—the quality of which, as we know, is not strained. It would mean nothing, we think, to tell the jury that the defendants must deserve mercy beyond a reasonable doubt; or must more-likely-than-not deserve it."). Therefore, the district court did not err in denying this claim as procedurally barred without conducting an evidentiary hearing.

*Actual innocence*

Thomas argues that even if he has not demonstrated cause and prejudice, he can overcome the procedural bars because he is actually innocent of the death penalty. *See Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001) (explaining that a fundamental miscarriage of justice based on actual innocence requires "a colorable showing [that the petitioner] is actually innocent of the crime or is ineligible for the death penalty"), *abrogated on other grounds by Rippo*, 134 Nev. at 423 n.12, 423 P.3d at 1097 n.12. Specifically, he argues that two of the aggravating circumstances were invalid and he is ineligible for the death penalty based on his age and borderline intellectual functioning.[12]

Thomas's actual-innocence claim based on the aggravating circumstances lacks merit. Even if this court were to agree with Thomas's arguments about the validity of two of the aggravating circumstances, that still leaves two valid aggravating circumstances with respect to each

_____

[12]Thomas also argues that he is actually innocent of the death penalty because no reasonable juror would have sentenced him to death in light of new mitigation evidence presented with the third postconviction petition. We have held, however, that a gateway claim that a petitioner is actually innocent of the death penalty must focus on the elements of the capital offense and the aggravating circumstances and cannot be based on new mitigation evidence. *See Lisle v. State*, 131 Nev. 356, 363-68, 351 P.3d 725, 730-34 (2015).

SUPREME COURT
OF
NEVADA

(O) 1947A

murder. Accordingly, that claim fails. *See Moore v. State*, 134 Nev. 262, 268-69, 417 P.3d 356, 362-63 (2018) (concluding that existence of valid aggravating circumstance rendered defendant "still eligible for death such that he is not actually innocent of the death penalty"); *Pellegrini*, 117 Nev. at 887, 34 P.3d at 537.

Thomas also has not demonstrated that he is ineligible for the death penalty based on his youth and borderline intellectual functioning. Offenders who were under 18 when they committed their crimes and those who are intellectually disabled are categorically exempt from the death penalty under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution. *Roper v. Simmons*, 543 U.S. 551, 578 (2005); *Atkins v. Virginia*, 536 U.S. 304, 321 (2002). Thomas concedes that he was over the age of 18 when he committed the crimes and that he is not intellectually disabled. He nonetheless argues that those categorical exclusions should be extended to defendants who were under the age of 25 at the time of the crime and those who suffer from borderline intellectual functioning that puts their "functional age" under 18. We recently declined a similar invitation in *Chappell v. State*, 137 Nev., Adv. Op. 83 at 37-38, 501 P.3d 935, 960 (2021), and we again decline the invitation here.[13]

*Statutory laches*

In addition to the procedural bars discussed above, Thomas's petition was also subject to dismissal under NRS 34.800. That statute

---

[13]In *State v. Tucker*, the Louisiana Supreme Court recognized that immaturity and below average intellectual functioning are mitigating circumstances but rejected a categorical prohibition against the death penalty under the Eighth Amendment based on those characteristics. 181 So. 3d 590, 628 (La. 2015).

 

states that a petition may be dismissed if the delay in filing the petition prejudices the State in either responding to the petition or retrying the petitioner. NRS 34.800(1). Although we have indicated that application of the procedural bar in NRS 34.800 is mandatory, *see State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225, 231, 112 P.3d 1070, 1074 (2005), the statute clearly uses permissive language, *see* NRS 34.800(1) ("[a] petition *may* be dismissed" (emphasis added)); *see also* Hearing on A.B. 517 Before the Assembly Comm. on Judiciary, 63d Leg. Ex. D (Nev., May 7, 1985) ("[T]he language of the subdivision, 'a petition may be dismissed,' is permissive rather than mandatory. This clearly allows the court which is considering the petition to use discretion in assessing the equities of the particular situation." (internal parenthetical omitted) (quoting 28 U.S.C. foll. § 2254, Rule 9 (1982) (effective January 14, 1983))).

Where the State specifically pleads laches, a rebuttable presumption of prejudice arises when the delay is more than 5 years from a decision on direct appeal. NRS 34.800(2). To overcome the presumption of prejudice to the State in responding to the petition, the petitioner must show that "the petition is based upon grounds of which the petitioner could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the State occurred." NRS 34.800(1)(a). And to overcome the prejudice to the State in retrying the petitioner, the petitioner must demonstrate that "a fundamental miscarriage of justice has occurred in the proceedings resulting in the judgment of conviction or sentence." NRS 34.800(1)(b); *see also Little v. Warden*, 117 Nev. 845, 853, 34 P.3d 540, 545 (2001).

Here, the State specifically pleaded laches, and the district court found that laches barred Thomas's petition. As Thomas's claims of

ineffective assistance of second postconviction counsel were not available before resolution of the postconviction petition challenging the death sentences imposed at the penalty phase retrial, it is arguable that Thomas, exercising reasonable diligence, could not have raised them sooner. *See Rippo*, 134 Nev. at 419-20, 423 P.3d at 1095 ("The basis for the [ineffective-assistance-of-postconviction-counsel] claim thus depends on the conclusion of the postconviction proceedings in which the ineffective assistance allegedly occurred."). While the district court largely did not abuse its discretion in applying laches to Thomas's petition, we have concluded that the district court erred in denying two claims of ineffective assistance of postconviction counsel without conducting an evidentiary hearing. If the district court, after conducting an evidentiary hearing on the two claims for which we are remanding this matter, concludes that Thomas exercised reasonable diligence in pursuing those claims, Thomas will have rebutted the presumption of prejudice under NRS 34.800(1)(a), and we believe the district court could exercise its discretion and decline to dismiss those claims under NRS 34.800. *See State v. Powell*, 122 Nev. 751, 758, 138 P.3d 453, 458 (2006) (noting that whether to dismiss a petition under NRS 34.800 is discretionary).

## CONCLUSION

While we conclude the district court properly denied most of the claims in Thomas's postconviction petition as procedurally barred, we conclude the district court erred when it denied two of the claims without conducting an evidentiary hearing. Specifically, we conclude that the district court should have conducted an evidentiary hearing on Thomas's good-cause and prejudice arguments based on second postconviction counsel's failure to litigate a penalty-phase-counsel claim with respect to one of the veniremembers who was seated on the jury and second

postconviction counsel's failure to adequately investigate and support a penalty-phase-counsel claim based on the mitigation case presented at the penalty phase retrial. No other claims of error have merit. Accordingly, we affirm the district court's order in part, reverse it in part, and remand for proceedings consistent with this opinion.

_____, J.
Herndon

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A